UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

STACIA BROWN                                              CIVIL ACTION

v.                                                        NO. 19-12398

SCF WAXLER MARINE, LLC                                    SECTION "F"

ORDER AND REASONS

Before the Court is the defendant's motion for summary judgment and accompanying dismissal of the plaintiff's complaint. For the reasons that follow, the motion is GRANTED.

**Background**

On February 3, 2017, the plaintiff Stacia Brown was terminated from employment with the defendant SCF Waxler Marine, LLC. At primary issue in this case is the reason for that termination. The company chalks Brown's firing up to a legitimate, nondiscriminatory reason: insubordination. Brown views matters differently and sues the company for FMLA retaliation and ADA discrimination.[1] The company seeks summary judgment dismissal of both claims.

---

[1] After completing discovery, Brown dismisses her own claims for FMLA interference and Title VII race discrimination. See Opp'n at 15 n.17.

1

I.

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate where the record reveals no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Supreme Court has emphasized that the mere assertion of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, where contradictory "evidence is merely colorable, or is not significantly probative," summary judgment remains appropriate. Id. at 249–50 (citation omitted). Likewise, summary judgment is appropriate where the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). In this regard, the nonmoving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Expl. Co., 974 F.2d 646, 649 (5th Cir. 1992). Instead,

2

it must come forward with competent evidence, such as affidavits or depositions, to buttress its competing claim. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible at trial do not qualify as competent opposing evidence. FED. R. CIV. P. 56(c)(2); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam).

Finally, in evaluating a summary judgment motion, the Court must read the facts in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255.

II.

A.

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Urged at this later stage in the proceedings, the company's motion for summary judgment reads and functions like a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. In essence, the company asserts that the undisputed facts in the record, even when read in the light most

3

favorable to Brown, do not establish that Brown has a plausible claim for relief against the company.  If the company is correct, then the Court must indeed grant summary judgment in the company's favor and dismiss Brown's claims as legally baseless.  See id.

The Court thus proceeds to evaluate Brown's ability to state a viable claim on the developed factual record at hand.

B.

Both of Brown's claims must be evaluated under the McDonnell Douglas burden-shifting framework.  See Wheat v. Fla. Par. Juv. Just. Comm'n, 811 F.3d 702, 705 (5th Cir. 2016) ("Retaliation claims under . . . the FMLA . . . are analyzed under the McDonnell Douglas burden-shifting framework."); McInnis v. Alamo Cmty. Coll. Dist., 207 F.3d 276, 279 (5th Cir. 2000) ("This being a case brought under the Americans With Disabilities Act where only circumstantial evidence is offered to show the alleged unlawful discrimination, we apply the McDonnell Douglas, Title VII burden-shifting analysis.").

Under the McDonnell Douglas framework, "once the employee establishes a *prima facie* case of retaliation [or discrimination], the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 332 (5th Cir.

4

2005). "If the employer succeeds in doing so, the burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination." Id. at 332–33.

Accordingly, as it pertains to both of Brown's outstanding claims, the Court must first determine whether Brown "establishes a *prima facie* case" of FMLA retaliation and/or ADA discrimination. See id. at 332. To prove FMLA retaliation, Brown must show (1) that she "was protected under the FMLA," (2) that she "suffered an adverse employment action," and (3) that she "was treated less favorably than an employee who had not requested leave under the FMLA" or that "the adverse decision was made because [she] sought protection under the FMLA." Mauder v. Metro. Transit Auth., 446 F.3d 574, 583 (5th Cir. 2006). Similarly, to "establish a prima facie discrimination claim under the ADA, [Brown] must prove: (1) that [she] has a disability; (2) that [she] was qualified for the job; [and] (3) that [she] was subject to an adverse employment decision on account of [her] disability." EEOC v. LHC Grp., Inc., 773 F.3d 688, 697 (5th Cir. 2014) (fourth alteration in original) (quoting Zenor v. El Paso Healthcare Sys., Ltd., 176 F.3d 847, 853 (5th Cir. 1999)).

5

Here, there is relatively little question as to the first two elements of each claim. Instead, as is often the case, the third element – causation – is the analytical focal point of both claims. On that issue, the company asserts that Brown lacks any substantive evidence that her termination was motivated by her disability or her decision to take FMLA leave, but Brown begs to differ.

Assume for sake of analysis, however, that Brown *can* establish the third element of each claim – and by extension, valid *prima facie* cases for unlawful FMLA retaliation and ADA discrimination. Even still, the undisputed facts in the record reveal that the company possessed "a legitimate, nondiscriminatory reason" for firing an at-will employee like Brown: namely, an honest belief that Brown had engaged in insubordination.[2]

---

[2] The essential and incontrovertible facts on Brown's insubordination are as follows: While Brown was away on medical leave from November 29, 2016 through January 9, 2017, the company implemented a new payroll review system. When Brown returned from leave, she was resistant to – or, at the very least, not readily receptive of - certain aspects of the new system. See, e.g., Pl.'s Resp. to Def.'s Statement of Uncontested Material Facts ¶ 7 ("Plaintiff testified that she was not being resistant; rather, she simply requested that she be permitted to continue correcting any errors that were uncovered."). In conversations regarding the new process, Brown's supervisor, Bryan Christy, found Brown to be argumentative and disrespectful. See, e.g., Mot., Ex. F at 30-33. In one such conversation, Christy gave Brown direct instructions with regard to her future administration of payroll; in particular, Christy directed Brown to allow Adam Morris to review Brown's work before its submission to Koretha Todd. See, e.g., id. Christy warned Brown that her failure to follow such

6

Because the company had a valid reason for terminating Brown, "the burden shifts back to [Brown] to show by a preponderance of the evidence that [the company's] articulated reason is a pretext for discrimination." Richardson, 434 F.3d at 332–33. Brown fails to do so. Simply put, there is very little reason to doubt the genuineness of Christy's belief that Brown contravened his instructions when she had already been warned not to do so. See supra note 2. As such, a preponderance of the evidence does not

---

instructions could result in her termination. See, e.g., id. A short time later, Christy reasonably perceived actions taken by Brown as a failure to follow such instructions, memorialized his understanding of all relevant events in a thorough email, and agreed with a human resources manager that termination was in order. See, e.g., id. at 77–78.

Contravening a superior's directions – as Brown reasonably appeared to do - is textbook insubordination. And rudeness, argumentativeness, and "attitude" likewise provide classic grounds for terminating an at-will employee. To be sure, workplace relationships can be – and often are – complicated, but few employees aggrieved by disagreements with their boss make a federal case out of their termination. Where an employee chooses to do so without any concrete evidence of unlawful animus, a court's primary inquiry lies in assessing the "honest belief" at the heart of the employer's stated rationale for the decision at issue – with all the subjectivity inherent in such a belief. See, e.g., Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 408–09 (5th Cir. 1999) ("The issue is whether [the employer's] *perception* of [the employee's] performance, accurate or not, was the real reason for her termination."). Against this backdrop, Brown's attempt to tease out supposed disputes of material fact on the exact manner in which the salient events unfolded is unavailing.

7

suggest that any factual mistakes[3] Brown's superiors made in assessing the situation amounted to the willful blindness of an employer in search of a valid reason for terminating a disabled employee who chose to avail herself of federal labor protections. Had Brown experienced no prior incidents or brush-ups,[4] or had she warmly accepted the newly enacted payroll system,[5] then a finding of retaliatory animus or pretense would not be such a tall order. As it stands, however, any evidence that Christy's sworn (and contemporaneously memorialized) understanding of events was pretextual is undeniably scant.

Brown counters that several disputes of material fact preclude summary judgment at this stage. In addition to maintaining that she did not engage in any insubordination

---

[3]   In response to the company's motion, Brown accuses the company of making too much of the appearance that Brown had "locked Morris out" of the company's payroll program. According to Brown, such "lock outs" occurred frequently with no ill intent, and Morris was well aware of that fact. Maybe so. But this fact alone is insufficient in meeting Brown's burden of proving animus or discrimination with purely circumstantial evidence – particularly when the company has provided significant evidence and deposition testimony supporting a good-faith belief that Brown had engaged in insubordination and other unacceptable behavior.

[4]   She had. According to Christy, he had "written Brown up" for bad behavior on two prior occasions. See Mot., Ex. F at 6–9.

[5]   She had not. According to Christy, Brown bristled at many of the changes to this aspect of her role at the company. See, e.g., Mot., Ex. F at 4.

whatsoever,[6] Brown draws supposed evidence of pretext from the company's failure

> to maintain a formal disciplinary policy, the vast discretion left to those who knew of [Brown's] medical issues and medical leave, the failure of the decisionmakers to equally 'consider the context' surrounding [Brown's] actions as compared to other SCF employees, the suspiciously close timing between [Brown's] return from leave and her termination, and the utter failure to investigate the purported offense.

See Opp'n at 1.

Each of these arguments requires the Court - with no direct evidence of animus or discriminatory intent to speak of – to second guess the company's business decision and practices.  The Court is not free to do so.  Indeed, the Court "does not sit as a super-personnel department that reexamines an entity's business decisions."  Dale v. Chi. Trib. Co., 797 F.2d 458, 464 (7th Cir. 1986).  "No matter how medieval a firm's practices, no matter how

---

[6] Brown is certainly entitled to her own opinion and version of events.  However, her subjective views are of far less salience than the subjective views of *the company*, which she has sued for retaliation and discrimination.  Indeed, as the Fifth Circuit has repeatedly held, "[m]anagement does not need to make proper decisions, only non-discriminatory ones." Bryant v. Compass Grp. USA Inc., 413 F.3d 471, 478 (5th Cir. 2005).  As such, in the mine run of cases where the truth lies somewhere in the middle, what *actually* occurred is less legally important than what the defendant-employer reasonably *perceived*.  Such is the case here as well – indeed, even if Christy was sorely mistaken as to the true nature of Brown's apparent insubordination, his good-faith belief that Brown had repeatedly been insubordinate provides a lawful basis for his decision to recommend that Brown be terminated.

high-handed its decisional process, no matter how mistaken the firm's managers," the Court's inquiry is strictly "whether the employer gave an honest explanation of its behavior." Pollard v. Rea Magnet Wire Co., 824 F.2d 557, 560 (7th Cir. 1987) (Easterbrook, J.).

As a result, even when viewed in the light most favorable to Brown, the tangled web of circumstantial evidence Brown offers in her 41-page opposition fails to show by a *preponderance* of the summary judgment evidence that the company's reasonable perception of Brown's insubordination is a mere pretext for FMLA retaliation or ADA discrimination. Cf. Richardson, 434 F.3d at 332–33; Moore v. Eli Lilly & Co., 990 F.2d 812, 815–16 (5th Cir. 1993) ("To demonstrate pretext, the plaintiff must do more than 'cast doubt on whether [the employer] had just cause for its decision'; he or she must 'show that a reasonable factfinder could conclude that [the employer's] reason[] [is] unworthy of credence.'" (alterations in original) (quoting Hanchey v. Energas Co., 925 F.2d 96, 99 (5th Cir. 1990) (per curiam))). Because a reasonable factfinder could not do so here, summary judgment is warranted.

\* \* \*

Aggrieved by her former employer's facially valid decision to terminate her for insubordination, the plaintiff cobbles together

10

unimpressive circumstantial evidence in a kitchen-sink damages suit.  In the same breath, her complaint accuses her former employer of not only terminating her in retaliation for her decision to take FMLA leave, but also discriminating against her on the basis of her disability, and even *her race*.  The Court sees no way on this record in which the plaintiff could successfully "bear the burden of proof at trial" on the developed factual record at hand.  Cf. Celotex, 477 U.S. at 322.

Accordingly, IT IS ORDERED: that the defendant's motion for summary judgment is GRANTED.  The plaintiff's claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, January 20, 2021

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE